844 F.2d 569
 46 Fair Empl.Prac.Cas. 1173,
46 Empl. Prac. Dec. P 37,937
Renee B. (DoBraska) MINTEER, Appellant,
v.
Calvin AUGER; State of Iowa; John Sissel; Russell
Behrends; Gary Winders; Michael Lambert; David
Kleis; Larry Kroll; et al., Appellees.
 No. 87-1071.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 16, 1987.
Decided April 20, 1988.
 
 Gordon D. Greta, Eldora, Iowa, for appellant.
 Gordeon E. Allen, Des Moines, Iowa, for appellees.
 Before ARNOLD and FAGG, Circuit Judges, and LARSON,* Senior District Judge.
 FAGG, Circuit Judge.
 
 
 1
 Renee B. (DoBraska) Minteer, a former State of Iowa employee, appeals the district court's dismissal of her action brought against the State and various of its employees asserting dual theories of sexual harassment and sex discrimination. See 42 U.S.C. Sec. 2000e; 42 U.S.C. Sec. 1983. We affirm.
 
 
 2
 Minteer worked for approximately one and one-half years as a correctional officer in the Iowa Men's Reformatory at Anamosa, Iowa (the Reformatory). Minteer's personnel record at the Reformatory contains the following disciplinary incidents: (1) filing an inappropriate disciplinary report against an inmate; (2) being inattentive or sleeping while on guard tower duty; and (3) offering an inmate unrestricted access outside the Reformatory by leaving two security gates unlocked. Minteer submitted the first two incidents to union grievance arbitration, and the discipline she initially received was modified in her favor. When the gate incident followed a few months later, Minteer was discharged.
 
 
 3
 Minteer's first theory of recovery is based on her assertion that harassment by coemployees subjected her to a sexually hostile and abusive working environment. Although an environment of this type may be a form of sex discrimination prohibited by Title VII, see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (Meritor ); Hall v. Gus Constr. Co., 842 F.2d 1010, 1012 (8th Cir. 1988), not all unwelcome harassment directed at Minteer provides grounds for recovery under this theory. In order to recover, Minteer must show the harassment was "sufficiently severe or pervasive 'to alter the conditions of [her] employment and create an abusive working environment.' " Meritor, 477 U.S. at 67, 106 S.Ct. at 2406 (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir.1982)); see also Hall, at 1014-15; 29 C.F.R. Sec. 1604.11(a) (1987).
 
 
 4
 The district court found Minteer was indeed subjected to unwelcome on-the-job sexual remarks by coemployees that were known or should have been known to the defendants and that would not have been made but for Minteer's gender. The court also found the remarks did not rise to the level of severity required by Meritor and that the defendants responded adequately to Minteer's complaints about the situation. Based on these findings, the district court concluded Minteer had failed to establish an actionable case of sexual harassment due to an offensive work environment.
 
 
 5
 Minteer's second theory of recovery asserts sex discrimination in the form of disparate treatment. This theory rests on Minteer's contention she was disciplined and ultimately discharged for engaging in conduct comparable to that of male correctional officers who were allowed to remain on the job or take early retirement. See, e.g., O'Connor v. Peru State College, 781 F.2d 632, 636-37 (8th Cir.1986). In response, the defendants contend Minteer's conduct was dissimilar to that of male correctional officers, and her discharge resulted solely from substandard work performance. See id.
 
 
 6
 On Minteer's discrimination theory of recovery, the district court found that while Minteer "produced substantial evidence that she performed as a correctional officer as well as some male correctional officers who were not discharged[,] * * * [t]he decision to discharge [Minteer] was based solely on legitimate business considerations[,] * * * [and her] gender was not a factor in the decision." Minteer v. Auger, No. C 84-79, slip op. at 2-3 (N.D.Iowa Dec. 15, 1986) (unpublished order). The court concluded Minteer had established a prima facie case of disparate treatment. After "decid[ing] which party's explanation of the employer's motivation it believe[d]," United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), the district court held Minteer could not recover because the defendants had articulated legitimate, nondiscriminatory reasons for her discharge, and Minteer had failed to prove those reasons were pretextual, see id. at 714-16, 103 S.Ct. at 1481-82; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).
 
 
 7
 The basic thrust of Minteer's appeal is that on each of her theories of recovery the district court made critical factual findings that are clearly erroneous. In particular, Minteer challenges the district court's findings regarding the severity of the sexual harassment and the actual reasons for her discharge.
 
 
 8
 Initially, we note that our role on appeal is not to re-try this case, and even if we are "convinced * * * [we] would have decided the case differently," we are bound by the district court's factual findings unless they are clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); see Powell v. Missouri State Highway & Transp. Dep't, 822 F.2d 798, 800 (8th Cir.1987). While the evidence may be in conflict, and even if one party's characterization of the case appeals to us more than another, we study the record only to determine "[i]f the district court's account of the evidence is plausible in light of the record reviewed in its entirety." Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511. We may not reverse unless " 'on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed.' " Id. at 573, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).
 
 
 9
 Minteer attacks the district court's conclusion on her sexual harassment theory that she did not establish a prima facie case, and she points to evidence in the record in support of her position. In addition to its determination of no prima facie case, however, the district court also found any harassment of Minteer was not sufficiently severe to permit recovery. We are persuaded this finding is not clearly erroneous. When "the district court has decided the ultimate factual issue, whether [Minteer] was the victim of [severe harassment], the district court's failure to apply the correct legal standard in determining whether [Minteer] presented a prima facie case is no longer relevant." See Daniels v. Board of Educ., 805 F.2d 203, 208 (6th Cir.1986). We thus find no error in the district court's disposition of this claim. Cf. Ward v. Arkansas State Police, 714 F.2d 62, 64-65 (8th Cir.1983).
 
 
 10
 Our inquiry into Minteer's claim of sex discrimination based on disparate treatment is focused not on the adequacy of her prima facie case, but on the ultimate factual issue of " '[whether] the defendant[s] intentionally discriminated against [Minteer],' " because of her sex. See Aikens, 460 U.S. at 715, 103 S.Ct. at 1482 (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093)). We also find no clear error in the district court's findings related to this theory.
 
 
 11
 Of the thousands of Reformatory personnel files, Minteer rests her case on less than ten that she claims demonstrate the more favorable treatment received by male employees. We have examined the evidence related to these employees as well as Minteer's personnel history. While we do not suggest Minteer did not present any evidence of discrimination (indeed, the district court found she had established a prima facie case), there is evidence in the record to support the district court's finding that Minteer's discharge was not motivated by her status as a female.
 
 
 12
 Minteer was discharged after committing three serious breaches of security in three separate areas of the Reformatory in one and one-half year's time. She acknowledges in her brief "no [other] employee ha[d] done exactly what * * * [she was] accused of." When specific incidents of employee misconduct are analyzed in isolation, the record shows males received a range of discipline--some comparable, some more lenient, and some more harsh than that received by Minteer. When asked to explain the disciplinary actions taken against particular employees, the warden of the Reformatory gave performance-based reasons that took into account the individualized circumstances of each employee's overall performance record at the Reformatory. When questioned specifically about Minteer, the warden testified she was "a bright lady, somebody who certainly should profit from her mistakes, and in our opinion did not, [and she] did not seem to take the security, because of these incidents, very seriously." In other words, Minteer was capable of performing her duties as a correctional officer, but she simply failed to do so.
 
 
 13
 Minteer also presented evidence the Reformatory's internal personnel guidelines for utilizing women as correctional officers had not been implemented and that the disciplinary record keeping system was in disarray. Minteer claims the failure to meet these guidelines is evidence both of discrimination and a hostile working environment. She contends the haphazard system of tracking disciplinary actions further disguised the unfair treatment she received in comparison with her male colleagues.
 
 
 14
 To the extent these practices exist they provide some evidence of discrimination, but that evidence does not nullify the conflicting proof that was offered by the defendants and analyzed by the district court. We acknowledge the record in this case contains evidence that has the potential for triggering inferences in favor of either Minteer or the defendants. The district court had the opportunity to evaluate that evidence first-hand, including the warden's explanations and the extensive Reformatory personnel records. In a case of that type, and one in which the credibility of witnesses and the conclusions to be drawn from documentary evidence are at stake, Anderson is our guide. See Anderson, 470 U.S. at 574, 105 S.Ct. at 1511. Under these circumstances, we believe the district court made a choice between "two permissible views of the evidence," see id., and hence, its findings are not clearly erroneous.
 
 
 15
 Neither of the statutes on which Minteer bases her recovery is a tool for resolving all undesirable personnel practices or every sort of harsh or unfair treatment of employees, and "[c]ourts may not interfere with honest business judgments just because they consider them unfair or misguided." O'Connor, 781 F.2d at 638; see id. n. 3. In relationship to Minteer's claims, these statutes only prohibit the defendants from treating Minteer differently than male employees based on the impermissible consideration of her sex. We conclude there is record support for the district court's ultimate finding that Minteer was discharged solely for legitimate business reasons unrelated to her sex.
 
 
 16
 We affirm the district court's dismissal of Minteer's complaint.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation