**Lisa Ann BURNS, Appellant,**

v.

**McGREGOR ELECTRONIC INDUSTRIES, INC.,**
**Appellee.**

No. 92–2059.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 18, 1992.

Decided March 30, 1993.

Rehearing and Rehearing En Banc
Denied April 29, 1993.

William Blum, Dubuque, Iowa, argued, for appellant.

Gary Robinson, Cedar Rapids, Iowa, argued, for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

LAY, Senior Circuit Judge.

This is a sexual harassment case brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* It comes to this court on appeal for the second time. The district court originally found in favor of the employer, McGregor Electronic Industries, Inc., on the ground that the plaintiff failed to prove sexual harassment under Title VII and that her termination was unrelated to any harassment. This court reversed. In an unanimous opinion authored by Judge Wollman, we remanded the case for further consideration by the trial court.[1] On April 7, 1992, the trial court reaffirmed its earlier findings. *Burns v. McGregor Elec. Indus., Inc.,* 807 F.Supp. 506 (N.D.Iowa 1992). On further review, we now reverse the trial court's order; based on the district court's latest opinion and the law of the case, as determined in our earlier review, we remand and direct that judgment be entered for the plaintiff, Lisa Ann Burns.

The grisly and shocking facts supporting a finding of unwelcome sexual harassment are contained in our earlier opinion and need not be repeated here. *See Burns v. McGregor Elec., Indus., Inc.,* 955 F.2d 559, 560–63 (8th Cir.1992).

In its first opinion, issued in July 1990, the district court found that there is "no doubt" that Paul Oslac, the owner of McGregor Electronic, made unwelcome sexual advances toward Burns during two periods when she was previously employed at the McGregor, Iowa company.[2] However, the district court found that plaintiff exaggerated the severity and pervasiveness of the sexual harassment and its effect on her. The trial court observed that Burns had previously appeared in provocative poses in a lewd magazine called *Easyriders.*

Some employees brought the magazine to work and circulated it. Oslac and other male workers repeatedly made harassing comments to Burns about the photographs.

Based on Burns's past behavior and the district judge's observation of her at trial, the trial court found that although the sexual advances at work were considered by Burns to be unwelcome, she would not have been offended by these advances and by the sexual innuendo from other employees and supervisors. The court also found that the sexual harassment subsided after Burns returned to work the third time, and that the primary reason she terminated her employment in 1984 was a work-related argument with one of her co-workers, Eugene Ottaway. On this basis, the court found that plaintiff failed to prove by a preponderance of evidence that "the harassment affected a term, condition, or privilege of employment."

Although acknowledging the trial court's finding of fact must be sustained unless clearly erroneous, this court, in its earlier opinion, reversed on the ground that the district court erred, as a matter of law, because its factual finding that the sexual advances by her employer were unwelcome was inconsistent with the finding that the plaintiff was not offended by the conduct of her employer. 955 F.2d at 965. This court also reasoned that the district court erred in compartmentalizing the question of harassment into the three work periods. We held the district court must look at the totality of circumstances of the entire hostile work environment without dividing the "work environment into a series of discrete incidents and then measur[ing] the harm occurring in each episode." *Id.* at 564.

On remand, the district court, quoting from our opinion, found "that a reasonable

---

1. The panel consisted of Judge Fagg, Senior Circuit Judge Henley, and Judge Wollman. *Burns v. McGregor Elec. Indus., Inc.,* 955 F.2d 559 (8th Cir.1992).

2. After dropping out of high school, Burns initially worked at McGregor from October 14, 1980 to August 10, 1981. She asserted that she quit because of sexual harassment by 65–year-old Paul Oslac, the owner of McGregor. Burns returned to work as a tester on September 15,

1981, and worked through June 20, 1983, at better pay. Once again, Burns testified, she quit work because of continued harassment. She was rehired and worked from September 26, 1983 to July 19, 1984, and according to her testimony, she was continually harassed. On July 19, 1984, she was involved in an argument with Eugene Ottaway, who handled packaging and shipping at McGregor, and quit work. She did not return to the company after that date.

person would consider the conduct of Oslac and his supervisors sufficiently severe or persuasive to alter the conditions of employment and create an abusive working environment." [3] However, the court once again entered judgment in favor of the employer for the identical reasons set forth in its earlier opinion: (1) the employer's behavior did not offend the plaintiff because she had earlier posed nude for *Easyriders;* (2) the cause of termination was not related to the earlier sexual harassment.

Based upon the undisputed facts, the district court's new determination that a reasonable person would find the employer's behavior sufficiently severe to alter the conditions of employment and create an abusive work environment, and the law of the case as determined in our earlier appeal, we now reverse with directions that the district court compute plaintiff's economic loss and enter judgment in favor of the plaintiff against the employer.

In the decision now before us, the trial court explained that it believes there are two elements necessary for establishing sexual harassment: (1) whether the conduct was unwelcome because it was not solicited or invited, and (2) whether the conduct was offensive to the plaintiff.

■ We believe the trial court erred in requiring proof that the conduct at issue was unwelcome and offensive. Our statement in our prior opinion that the trial court's earlier findings were internally inconsistent was intended to convey this understanding. "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). On remand the trial court overlooked this

court's earlier direction that "the threshold for determining that conduct is *unwelcome*" is whether it was uninvited and offensive. 955 F.2d at 565 (emphasis added). Thus, as we earlier held, for the court to find that the conduct was unwelcome but not offensive was internally inconsistent as a matter of law. Whether the behavior is unwelcomed is to be determined by weighing whether the conduct was uninvited and offensive.

■ The Supreme Court in *Meritor* makes this clear. Whether a plaintiff acquiesces in the employer's conduct is relevant not as a separate defense to a claim of sexual harassment, but is relevant to whether the sexual advances were "unwelcome." *Meritor,* 477 U.S. at 68, 106 S.Ct. at 2406. Thus, the Court observed: "The correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome, not whether the actual participation in sexual intercourse was voluntary." *Id.*

■ The district court found that notwithstanding the fact that the employer's conduct was unwelcome and created a hostile work environment, the plaintiff was not an "affected" individual in that she did not regard the conduct of her employer as undesirable or offensive. This finding was premised on the fact that plaintiff had appeared in non-work related nude poses in lewd magazines. We rejected this reasoning in our earlier opinion. We observed:

> The district court's finding that Oslac's advances were unwelcome necessarily required the district court to believe Burns' testimony that Oslac's behavior was offensive to her. Thus, the district court's finding that Oslac made unwelcome advances toward Burns and its finding that

---

**3.** We note and agree with commentary that suggests, in hostile environment litigation under Title VII, the appropriate standard is that of a reasonable woman under similar circumstances. *See Ellison v. Brady,* 924 F.2d 872, 879–80 (9th Cir.1991); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485–86 (3d Cir.1990); *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987); Bonnie B. Westman, Note, *The Reasonable Woman Standard: Preventing Sexual Harassment in the Workplace,* 18 Wm.Mitchell L.Rev. 795, 818–28 (1992). In adopting a "reasonable person" test under Title VII, the EEOC has stressed that objective criteria should be utilized from "the victim's perspective and not stereotyped notions of acceptable behavior." EEOC Compliance Manual (CCH) § 614, ¶ 3114(C)(1), at 3274 (1990). Thus, behavior a reasonable woman would find objectionable may be actionable "even if many people deem it to be harmless or insignificant." *Id.*

Burns was not credible when she stated that Oslac's behavior was offensive appear on their face to be internally inconsistent.

955 F.2d at 565. We added:

The district court reasoned that a person who would

appear nude in a national magazine could not be offended by the behavior which took place at the McGregor plant. It also believed that Burns had exaggerated the severity and pervasiveness of the harassment and its effect on her. Again, these findings are at odds with the district court's finding that Oslac's advances were unwelcome.

*Id.* at 566. The plaintiff's choice to pose for a nude magazine outside work hours is not material to the issue of whether plaintiff found her employer's work-related conduct offensive. This is not a case where Burns posed in provocative and suggestive ways at work. Her private life, regardless how reprehensible the trier of fact might find it to be, did not provide lawful acquiescence to unwanted sexual advances at her work place by her employer. To hold otherwise would be contrary to Title VII's goal of ridding the work place of any kind of unwelcome sexual harassment. In *Swentek v. USAIR, Inc.*, 830 F.2d 552 (4th Cir.1987), the court rejected identical reasoning as used by the district court here. Even though the plaintiff had used foul language in the past, the court reversed the district court and observed:

We note at the outset that the trial court misconstrued what constitutes unwelcome sexual harassment. It held that Swentek's own past conduct and use of foul language meant that Ludlam's comments were "not unwelcome" even though she told Ludlam to leave her alone. In his oral opinion, the judge determined, not that Swentek welcomed Ludlam's comments in particular, but that she was the kind of person who could not be offended by such comments and therefore welcomed them generally.

We think that was error. Plaintiff's use of foul language or sexual innuendo in a consensual setting does not waive "her legal protections against unwelcome harassment." *Katz*, 709 F.2d at 254 n. 3. The trial judge must determine whether plaintiff welcomed the particular conduct in question from the alleged harasser.[4]

*Id.* at 557.

The trial court made explicit findings that the conduct was not invited or solicited despite her posing naked for a magazine distributed nationally. The court believed, however, that because of her outside conduct, including her "interest in having her nude pictures appear in a magazine containing much lewd and crude sexually explicit material," the uninvited sexual advances of her employer were not "in and of itself offensive to her." The court explained that Burns "would not have been offended if someone she was attracted to did or said the same thing."

We hold that such a view is unsupported in law. If the court intended this as a standard or rationale for a standard, it is clearly in error. This rationale would allow a complete stranger to pursue sexual behavior at work that a female worker would accept from her husband or boyfriend. This standard would allow a male employee to kiss or fondle a female worker at the workplace. None of the plaintiff's conduct, which the court found relevant to bar her action, was work related. Burns did not tell sexual stories or engage in sexual gestures at work. She did not initiate sexual talk or solicit sexual encounters with co-employees. Under the trial court's rationale, if a woman taught part-time sexual education at a high school or college, a court would be compelled to find that sexual language, even though uninvited when directed at her in the work place, would not offend her as it might someone else who was not as accustomed to public usage of the terms.

As we stated in our earlier opinion:

**4.** The Fourth Circuit, in *Katz v. Dole,* 709 F.2d 251, 254 n. 3 (4th Cir.1983), observed: "A person's private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment."

To prevail in her sexual harassment claim based on "hostile environment," Burns must show that 1) she belongs to a protected group; 2) she was subject to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition, or privilege of employment; and 5) McGregor knew or should have known of the harassment and failed to take proper remedial action.

955 F.2d at 564 (citing *Staton v. Maries County,* 868 F.2d 996, 998 (8th Cir.1989)).

We need not remand for reconsideration since we find that it is undisputed that the trial court has determined that the respondent's conduct was unwelcomed by the plaintiff and was such that a hypothetical reasonable woman would consider the conduct sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. The evidence that plaintiff had engaged in posing for nude pictures in *Easyriders* magazine, although relevant to the totality of the events that ensued, cannot constitute a defense to her claim of a hostile sexual harassment environment at the work place when, as here, the trial court has determined that it did not constitute an invitation to engage in sexual discourse.

■ We come now to the issue of causation. The trial court concluded that "[e]ven if plaintiff has established a hostile working environment and was as affected as the hypothetical reasonable person, she has ... failed to establish the required causal connection between the hostile working environment and her resignation." The trial court then returned to its reasoning in its first opinion that "the primary reason she left work and did not return was the incident on the last day during which she and Eugene Ottaway got into a violent name calling argument and speakers were knocked about."

It is urged that the court's finding on causation cannot be set aside unless it is

clearly erroneous. We agree but we hold the finding is clearly erroneous for several reasons:

First, it ignores the law of the case. The trial court made the same finding in its first decision, yet it was reversed as ignoring the totality of the circumstances. Once again, relying on its original error, the court has compartmentalized the third employment period, separating it and the plaintiff's resignation from the earlier employment periods.

Second, the court errs in holding that the Ottaway incident was unrelated to sexual harassment. Ottaway had moved a stack of speakers to the plaintiff's work area. Burns asked Ottaway to move the speakers into her work room and not stack them so high. Ottaway responded by throwing the speakers. He then resorted to offensive name calling. The plaintiff became upset and quit her job.

Sexual harassment can take place in many different ways. A female worker need not be propositioned, touched offensively, or harassed by sexual innuendo—all of which occurred here. "Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances."[5] *Hall v. Gus Const. Co.,* 842 F.2d 1010, 1014 (8th Cir.1988).

Relevant here is Ottaway's admission that he used "nasty" terms—"every name in the book"—in yelling at Burns during their exchange. Among the names he used were "bitch," "asshole," "slut" and "cunt." We previously determined this behavior amounted to "obscene name-calling" and stated it was "harassment ... based on Burns' sex." 955 F.2d at 564. We further noted that Ottaway had on prior occasions directed the same kind of wretched abuse toward Burns. *Id.* at 561. Furthermore, Ottaway was one of the people at McGregor who "knew of the nude pictures and harassed Burns about them." *Id.* at 565.

---

**5.** Sexual harassment is "[u]nwelcome ... verbal or physical conduct of a sexual nature ..." 29 C.F.R. § 1604.11(a) (1992). "Title VII affords employees the right to work in an environment

free from discriminatory intimidation, ridicule, and insult." *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

■ We cannot accept the employer's callous explanation that since Ottaway and Burns did not get along together, his "verbal assault on Plaintiff would have occurred even if Plaintiff had not been a woman." There is no excuse in any work environment for subjecting a female worker to such verbal abuse even if the harasser and the plaintiff did not like each other, especially when this dislike results in a steady stream of sexual harassment. Vulgar and offensive epithets such as these are "widely recognized as not only improper but as intensely degrading, deriving their power to wound not only from their meaning but also from 'the disgust and violence they express phonetically.' " *Katz v. Dole,* 709 F.2d 251, 254 (4th Cir.1983) (quoting C. Miller & K. Swift, *Words and Women* 109 (1977)); *see also Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir.1990) (holding that "pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment"); *Ellison v. Brady,* 924 F.2d 872, 877–78 (9th Cir.1991) (same); *but see Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). The EEOC agrees that a "workplace in which sexual slurs, displays of 'girlie' pictures, and other offensive conduct abound can constitute a hostile work environment even if many people deem it to be harmless or insignificant." EEOC Compliance Manual (CCH) § 614, ¶ 3114(C)(1), at 3274 (1990). In *Hall v. Gus Construction Co.,* we upheld a Title VII award to female employees subjected to similar epithets as used here, stating that "any harassment or unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." 842 F.2d at 1014 (quoting *McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir.1985)). It makes no difference that the language in question may be unobjectionable to some groups of men. We must view the harassment from the victim's perspective, and in this case the victim is a woman. *Ellison,*

924 F.2d at 878; *Yates v. Avco Corp.,* 819 F.2d 630, 637 & n. 2 (6th Cir.1987) (stating that "men and women are vulnerable in different ways and offended by different behavior"). As the Third Circuit said in *Andrews:*

> Obscene language and pornography quite possibly could be regarded as "highly offensive to a woman who seeks to deal with her fellow employees and clients with professional dignity and without the barrier of sexual differentiation and abuse." Although men may find these actions harmless and innocent, it is highly possible that women may feel otherwise.

895 F.2d at 1485–86 (citations omitted).

Ottaway's conduct fits into the continuum of harassment against Burns and would be offensive to a reasonable woman. When one views the totality of circumstances, there can be no question that this episode merely extended the same hostile environment that existed in the first two employment periods. As we said in our prior opinion, the owner of the company repeatedly attempted to coerce Burns into a sexual relationship; some of his supervisors assisted in this endeavor. Ottaway, himself, harassed Burns over her nude depiction in a national magazine. He called her crude names on various occasions. On the day in question, he called her a "cunt" and a "bitch." The fact that this harassment differed from Oslac's sexual advancements is immaterial. *Hall,* 842 F.2d at 1013–15. This behavior clearly violates Title VII.

■ We also disagree with the district court's reliance on its finding that "but for [the Ottaway] episode ... plaintiff would have continued to work at McGregor until she, like the other employees, could have found a job elsewhere." This reflects a misunderstanding of the law surrounding a sexual harassment claim under Title VII. A woman does not have to endure a hostile environment in order to keep her job until she can find one elsewhere. As made clear in *Meritor,* "voluntariness," even voluntary submission to sexual intercourse, is not a defense to a claim of a hostile environment. 477 U.S. at 68, 106 S.Ct. at 2406. The Supreme Court in *Meritor* emphasizes this

966

point by quoting an Eleventh Circuit opinion stating:

Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.

*Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. Dundee*, 682 F.2d 897, 902 (1982)).

No female worker must endure continual verbal abuse. Although Ottaway stated that he was "in charge" of "packaging and shipping," the record shows that he was not one of Burns's supervisors. Nevertheless, as our prior decision held, after Burns's pictures were circulated at the plant, Ottaway harassed Burns about them, and he called Burns and other employees names of a sexual nature. The record supports this court's earlier finding that "Burns' complaints to her supervisors about Ottaway's conduct bore no results." 955 F.2d at 565. We also noted in our opinion that plant owner Oslac knew some coworkers were harassing Burns and rather than stop it, he "used that harassment to further his own harassment" of her. *Id.* at 564. As we stated in *Barrett v. Omaha Nat'l Bank*, 726 F.2d 424, 427 (8th Cir. 1984), "[s]exual harassment by a co-employee" is a violation of Title VII if "the employer knew or should have known of the harassment and failed to take immediate and appropriate action."[6] *See also* 29 C.F.R. § 1604.11(d) (same). Ottaway's conduct on the day that Burns quit was simply a continuation of the prior sexual harassment she had received from him which her supervisors had ignored. Under these circumstances, for a co-employee to refer to a woman employee as a "bitch" or "cunt" in the work place is indefensible. Given the long history of harassment from Ottaway

and others at McGregor, and the fact that Burns had complained to her supervisors about such abuse, there can be no question that Ottaway's hostile abuse and harassment constituted a violation of sexual harassment by her employer under Title VII. The district court's conclusion that this incident was unrelated to the sexual harassment of Burns is thus clearly in error.

On this basis we find the district court erred in finding for the employer; we reverse and remand and direct that judgment be entered for the plaintiff.

---

**6.** We employed this standard in our prior opinion in this case, stating that Burns was required to show "McGregor knew or should of known of the harassment and failed to take proper remedial action." 955 F.2d at 564. We observed the district court found that Burns satisfied this element and agreed that this finding was "clearly supported by the record." *Id.*