**Pamela J. DULL and Judith R. Gray, Plaintiffs,**

v.

**ST. LUKE'S HOSPITAL OF DULUTH, Defendant.**

**Civil No. 5–96–240.**

United States District Court, D. Minnesota, Fifth Division.

Sept. 24, 1998.

Karla R. Wahl, Wahl Law Office, Mpls, MN, Peter James Nickitas, Nickitas Law Office, Superior, WI, for plaintiffs.

Patti J. Skoglund, David Johnn Hoekstra, Jardine Logan & O'Brien, St Paul, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Plaintiffs Pamela J. Dull and Judith R. Gray bring this action against defendant St. Luke's Hospital of Duluth (St.Luke's). In their Complaint, Dull and Gray allege St. Luke's discriminated against them on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.01, *et seq.* They also alleged St. Luke's retaliated against them because they opposed and protested acts of discrimination. Dull further claims St. Luke's defamed her to Northland Hospital ("Northland") and tortiously interfered with her contract with Northland.

This matter is before the Court on St. Luke's motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Dull began working at St. Luke's in 1983. During her tenure there, she worked as an administrative secretary, radiology secretary, and ultimately a secretary in public relations. She was terminated on July 11, 1995.

Gray has been employed at St. Luke's since 1971. She has held different positions but is currently the hospital's payroll auditor. It is undisputed that she and Dull are close friends.

Dull alleges that during the last three years of her tenure at the hospital, Phil Alioto, the hospital's Chief Executive Officer subjected her to a barrage of comments and jokes of a sexual nature. She claims there were approximately twenty such incidents, although she discusses only six or seven examples. For instance, Dull claims that Alioto made a comment regarding a penis illustration for a patient handout, he asked whether she was "on PMS" in response to her being crabby, he placed on Dull's desk an off-color joke regarding gynecologists, he told a joke about "blonds," and he motioned

to Dull's breasts and his crotch while telling a joke of a sexual nature. Gray allegedly witnessed the last of these incidents, and reported it to St. Luke's after Dull had been terminated.

Dull also alleges that Earl Billmeyer, St. Luke's Director of Human Services, made two inappropriate comments to her of a sexual nature during this period. She alleges he asked "are you trying to turn me on" while looking at her cleavage. She also claims he later stated "you've got nice breasts."

Dull admits that she never told Alioto or Billmeyer that these comments and jokes were unwelcome. She claims, however, that her response was silence, an unapproving response like "no" or "ish," or embarrassment such as blushing. She testified that she would not want to go to work after Alioto had made comments or jokes and that she would hide under her desk to avoid him when she saw him enter her department. She also alleges she was intimidated by Alioto and afraid to speak up for fear that she would be fired.[1]

St. Luke's responds that she has presented no evidence that she signaled that these comments and jokes were unwelcome. It also points to numerous examples of off-color banter or conversations in which Dull admits she participated. According to St. Luke's, Dull's conduct suggests she did not find her co-workers' jokes and comments unwelcome.

Dull reported to Billmeyer in 1993 that she had been verbally abused by Deb Clasen, her supervisor at the time. This alleged harassment, however, was not of a sexual nature. Although she suggests in her memorandum that she mentioned to Billmeyer in that meeting that she had been subjected to sexual harassment, she admitted in her deposition that in fact she did not bring up that subject of sexual harassment. Dull did testify that, in 1994, she informed Lynn Devlin—her supervisor at that time—that Alioto was "telling dirty jokes again." However, she did not tell Devlin that she was being sexually harassed or ask that an investigation be undertaken. Likewise, that same year she com-

---

1. In Gray's affidavit, she states that Alioto once touched Dull on the shoulder in an attempt to turn her around, and Dull found this to be an unwelcome gesture. However, this occurred on March 1, 1996, almost a year after Dull was terminated.

mented to Linda Basara, the Director of Human Resources at the time, that Alioto was "just telling dirty jokes" again. However, she did not express disapproval to Barasa or suggest that she had been sexually harassed.

Prior to her termination by St. Luke's, Dull was performing additional typing work for Northland. While she was at Northland, it is undisputed that she saw Alioto in the waiting room and apparently saw some of his patient information.

In June 1995 Alioto received complaints from a number of St. Luke's staff members that Dull was engaging in unprofessional conduct, including breaching patient (Alioto's) confidentiality, telling people Alioto was paying Board members under the table, divulging payroll information, and typing for Northland on St. Luke's time. Dull denies much of this wrongdoing, but admits she disclosed to others that Alioto was a patient at Northland's urology department. She also admitted discussing rumors that hospital board members were being paid under the table and that Alioto was impotent.

After an investigation by Billmeyer, Alioto terminated Dull. On her termination form, the stated reason for the adverse action was breaching patient confidentiality.

The next day, Gray, who had access to payroll files, was suspended for three days without pay. The reason she was given for the suspension was "revealing confidential payroll information." Thereafter, she reported to St. Luke's officials alleged incidents of sexual harassment of Dull by Alioto.

After Gray reported sexual harassment, St. Luke's brought in an employment lawyer to conduct an investigation. Upon completion of the investigation in September 1995, Gray's suspension was revoked, and she was reimbursed for the three days of work she had lost. The investigator also concluded that there was not sufficient evidence to find that Alioto had harassed Dull.

Dull also was terminated by Northland in July 1995. She alleges Northland terminated her because Alioto had called and warned Northland not to use her services. She alleges specifically that Deb Parks informed her that Alioto had told Dr. Hutchinson, head of Northland Urology, that if Northland continued to use Dull's services, St. Luke's would restrict Northland's hospital privileges.

## ANALYSIS

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment, stating in pertinent part:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). Accordingly, the nonmovant "must make a sufficient showing on every essential element of its case for which it has the burden of proof

at trial." *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir.1995).

## II. Gender Discrimination

Although the Complaint suggests that Dull intended to allege that she was terminated because of her gender, in her responsive papers, she provides no evidence or argument to support such a claim. Likewise, Gray has abandoned her apparent claims that she was treated adversely because of her gender and subjected to a hostile work environment. Thus, the only portion of the Complaint's gender discrimination count that remains is Dull's claim that St. Luke's subjected her to a sex-based hostile work environment.

■ To prevail on her sexual harassment theory, Dull must establish that 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was related to sex; 4) the harassment affected a term, condition, or privilege of her employment; and 5) St. Luke's knew or should have known of the harassment and failed to take appropriate remedial action. *See, e.g., Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1110 (8th Cir. 1997); *see also Cummings v. Koehnen*, 568 N.W.2d 418, 424 (Minn.1997). There is no dispute that the first and third elements are satisfied here.

St. Luke's claims Dull cannot satisfy the second element because she has offered no evidence that the sex-based comments and conduct of Alioto and Billmeyer were unwelcome. The Court disagrees. Dull contends the comments and conduct offended and embarrassed her. Although she did not tell anyone that this conduct was "unwelcome," this does not rule out that she was offended or embarrassed, particularly in light of the fact that she may have been intimidated because Alioto was St. Luke's CEO and Billmeyer was the Director of Human Services. Moreover, the Court rejects the contention that simply because Dull may have used vulgarities in other contexts, she could not have found Alioto's and Billmeyer's conduct to be unwelcome. While her conduct in other contexts may otherwise be relevant, it does not demonstrate as a matter of law that she was inviting all types of sexually explicit statements and conduct. *See, e.g., Burns v.*

*McGregor Elec. Indus.*, 989 F.2d 959, 963–64 (8th Cir.1993) (rejecting the contention that simply because the plaintiff has engaged in vulgar speech or approved of other conduct of a sexual nature in other contexts, the plaintiff cannot establish that particular acts of alleged sexual harassment were unwelcome or personally offensive). Thus, there is clearly a fact question as to whether the Alioto's and Billmeyer's conduct was unwelcome.

■ To establish the fourth element, Dull must show that the alleged conduct was "sufficiently severe or pervasive 'to alter the conditions of [his] employment and create an abusive working environment.' " *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). Whether sexual conduct is sufficiently severe to create a hostile work environment is determined from the totality of the circumstances, including the frequency of the sexual conduct, its severity, whether it was physically threatening or humiliating, and whether it interferes with the employee's work performance. *See, e.g., Thompson v. Campbell*, 845 F.Supp. 665, 673–74 (D.Minn. 1994) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–24; 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993)).

This element presents a close question. Certainly, the fact that Dull failed to inform anyone except Gray that this behavior upset her calls her credibility into question and may limit her potential damages. Moreover, the jokes and comments at issue were neither constant nor physically threatening. Likewise, there is no evidence tying Alioto's or Billmeyer's conduct to a particular term of Dull's employment or suggesting Alioto or Billmeyer ever threatened Dull.

■ However, viewing the facts in a light most favorable to Dull, the Court finds that she has presented a triable issue as to whether Alioto's and Billmeyer's combined conduct created an abusive working environment that affected the conditions of her employment. During the relevant period, Alioto and Billmeyer were high ranking officials at St. Luke's, and Alioto was known to have an intimidating management style. Dull contends their allegedly offensive conduct (relat-

ed to sex) was frequent during the three years preceding Dull's termination, and she cites to eight or nine specific examples. Some of the comments and conduct at issue were quite graphic and several were personal in nature. Dull testified that Alioto's behavior embarrassed and upset her enough that she sometimes wanted to avoid going to work and would hide or find other ways to avoid him. Such evidence, if believed, is enough to establish a frequent, severe, and humiliating pattern of behavior that may have created an abusive environment which interfered with Dull's ability to perform her job.

The Court notes that it believes Dull's claim barely satisfies the standards set forth in *Meritor* and its progeny. Nevertheless, she has presented sufficient evidence to survive summary judgment on this element of her hostile work environment claim.

■ Finally, the Court finds that the fifth prong is satisfied here. Although the parties discussed the issue of notice at length at the hearing on this matter, intervening Supreme Court precedent makes clear that, to hold her employer "vicariously liable" for the harassing conduct by supervisory personnel, an employee need not report incidents of sexual harassment. *See Faragher v. City of Boca Raton*, — U.S. —, — – —, 118 S.Ct. 2275, 2291–93, 141 L.Ed.2d 662 (1998) (holding an employer vicariously liable for sexual harassment by supervisors with authority over the victim where there was no independent complaint or report of such harassment pursuant an existing sexual harassment policy or otherwise); *Burlington Indus., Inc. v. Ellerth*, — U.S. —, — – —, 118 S.Ct. 2257, 2269–70, 141 L.Ed.2d 633 (1998) (same). Both Alioto and Billmeyer were above Dull in the chain of command and authority, and hence, they were her supervisors. Thus, St. Luke's had imputed knowledge of the allegedly harassing conduct.

While Dull's claim for damages may be severely limited by her failure to mitigate potential harm through reporting violations pursuant to St. Luke's sexual harassment policy, she can establish liability without having made such reports.[2] *See, e.g., Faragher*, — U.S. at — – —, 118 S.Ct. at 2292–93 (holding an employer may have an affirmative defense to liability or damages where the employer exercised reasonable care to prevent harassment and plaintiff failed to take advantage of corrective opportunities); *Burlington Indus.*, — U.S. at — – —, 118 S.Ct. at 2269–70 (same). St. Luke's motion for summary judgment on Dull's hostile work environment claim therefore is denied.

## III. Retaliation

■ Both Dull and Gray claim St. Luke's retaliated against them for reporting sexual harassment. To establish a prima facie claim of retaliation, Dull and Gray must demonstrate that 1) one or both of them reported discriminatory or harassing conduct; 2) St. Luke's subsequently took adverse employment action(s) against them; and 3) any adverse action was causally linked to the report. *See, e.g., Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir.1997); *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 444 (Minn.1983).

■ Neither Dull nor Gray has presented facts to support a retaliation claim. Dull's retaliation claim fails because she has presented no evidence that she reported discriminatory or harassing conduct and no evidence that tends to show that her termination was an act of reprisal. Dull never expressed to Alioto or Billmeyer that their conduct was unwelcome. Likewise, Dull's two earlier statements to other St. Luke's personnel that Alioto was "telling dirty jokes" do not constitute reports of harassment since she did not indicate that she was offended, harassed, or humiliated by this conduct.[3]

Moreover, reprisal cannot be inferred from these two statements because they were not temporally proximate to her termination in July 1995. In addition, St. Luke's reasons for terminating Dull—including disclosing confidential patient information and discussing confidential payroll information—are well-documented,[4] and Dull admits she dis-

---

2. The Court need not reach the issue of whether Dull is entitled to any damages if she establishes at trial that St. Luke's is liable under this claim.

3. Dull's report to Billmeyer of alleged verbal abuse by Deb Clasen undisputedly did not address any type of sexual harassment.

4. In the report prepared after St. Luke's internal

closed patient information. St. Luke's therefore had an undisputed, non-retaliatory reason for terminating Dull. She simply offers no evidence from which a jury could draw an inference that her displeasure with Alioto's and Billmeyer's conduct caused her to be terminated.

■ Gray's claim that her suspension was an act of reprisal is even weaker. Gray's suspension occurred *before* she reported Alioto's inappropriate conduct toward Dull. It therefore could not have been an act of retaliation. Furthermore, because Dull never reported alleged incidents of harassment, Gray's complaint was the first time Alioto and other St. Luke's personnel had received a report. Thus, whether or not Gray was suspended because of her association with Dull, she was not suspended because of a report of sexual harassment. Summary judgment is appropriate on both Dull's and Gray's retaliation claims.[5]

## IV. Defamation and Tortious Interference with Contract

Dull also alleges that St. Luke's defamed her and interfered with her contract with Northland. However, these claims are supported solely by Dull's allegation that Parks informed her that Alioto had told Dr. Hutchinson that if Northland continued to use Dull's services, St. Luke's would restrict Northland's hospital privileges. Dull offers Parks' statement (and Hutchinson's statement to Parks) for the truth of the matter asserted. Her only evidence therefore is premised on (double) hearsay.[6]

■ Hearsay evidence alone is insufficient to defeat summary judgment. *See Fire-*

*men's Fund Ins. Co. v. Thien,* 8 F.3d 1307, 1310 (8th Cir.1993) ("Inadmissible hearsay evidence alone may not defeat a summary judgment motion."). Because Dull's testimony relies on (double) hearsay and is the only proffered evidence supporting both of these claims, her defamation and tortious interference claims must be dismissed.[7]

## ORDER

Based on the foregoing, and all the records, files, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant's motion for summary judgment [Docket No. 35] is **GRANTED IN PART** and **DENIED IN PART.**

2. Defendant's motion is **DENIED** as to plaintiff Dull's discrimination claim (Count One) to the extent the claim is based on St. Luke's alleged maintenance of a hostile work environment.

3. Defendant's motion is **GRANTED** in all other respects, and Dull's reprisal (Count Two), defamation (Count Three), and interference with contractual relations (Count Four) claims, and plaintiff Gray's discrimination (Count One) and reprisal (Count Two) claims are **DISMISSED WITH PREJUDICED.**

investigation, Beth Johnson and others discuss in detail information Dull relayed to them regarding Alioto's treatment at Northland and salary information of other employees. Johnson stated that this is why she sent the memorandum to Alioto that ultimately led to Dull's termination.

5. Because Dull's retaliation claim is dismissed, she is not entitled to seek any damages arising out of her termination. Her damages, if any, are limited to those directly associated with harm resulting from sexual harassment.

6. Dull contends that this evidence falls within the hearsay exception set forth in Rule 803(21) of the Federal Rules of Evidence for statements that go to a person's reputation as to character. Alioto's

alleged statement may fit within this exception (and probably is not even hearsay), but the statement of Parks (and the underlying statement of Hutchinson) is not offered to show reputation. Rather, it is offered to prove that Alioto made the alleged defamatory statement. Parks' statement therefore does not fall within this exception.

7. Plaintiffs had contended that summary judgment is inappropriate because, under Rule 56(f) of the Federal Rules of Civil Procedure, they are entitled to complete discovery to determine whether there are genuine disputes of material facts. However, in an Order dated December 14, 1997, the Court affirmed the Magistrate Judge's denial of plaintiffs' request for an extension of the discovery deadline.