_____

95-3387

_____

Phil Quick,                                     *
                                                *
      Appellant,                                *
                                                *   Appeal from the United States
      v.                                        *   District Court for the
                                                *   Southern District of Iowa.
Donaldson Company, Inc.,                         *
                                                *
      Appellee.                                 *

_____

Submitted:   April 11, 1996

Filed:   July 29, 1996

_____

Before BEAM and MURPHY, Circuit Judges, and NANGLE,[*] District Judge.

_____

MURPHY, Circuit Judge.

This case raises hostile environment sexual harassment claims based on allegations that male co-workers physically and verbally harassed Phil Quick for two years and that his employer, Donaldson Company, Inc. (Donaldson), knew of the harassment but failed to respond with proper remedial action, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Iowa Civil Rights Act, Iowa Code Chapter 216.  The district court granted summary judgment to Donaldson, and Quick appeals from that judgment.  We reverse and remand.

_____

[*]The HONORABLE JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

Phil Quick joined Donaldson in January 1991 as a welder and press operator in its muffler production plant in Grinell, Iowa. About eighty-five percent of the 279 employees at the plant are male. Quick claims he was the workplace victim of "bagging," physical assault, and verbal harassment, including taunting about being homosexual.[1] He asserts that he has an action under Title VII and state law for sex discrimination based on sexual harassment in a hostile work environment.

Quick alleges that at least twelve different male co-workers bagged him on some 100 occasions from January 1991 through December 1992. "Bagging" is defined in the record in various ways, but typically involved an action aimed at a man's groin area. According to Quick, bagging meant the intentional grabbing and squeezing of another person's testicles. Supervisor Roger Daniels explained that one man would walk past another and make a feinting motion with his hand toward the other's groin. Daniels stated bagging was widespread, that people in a variety of departments participated in it, and that he himself had bagged others. Supervisor Brett Musgrove, who first observed the practice at Donaldson in approximately 1987, referred to it as a flicking gesture towards a man's genitals to startle him. Plant manager Harold Schoen became aware in 1981 that bagging occurred at the plant, which he described as a hand motion toward an employee's groin area. Schoen said he warned Quick when he was hired in 1991 that it could happen to him.

Other employees testified in deposition that bagging involved hitting another's testicles or upper thigh or snapping someone in the groin area. The record does not contain any incidents of a female plant employee being bagged, but it does reveal that in

---

[1]There is no dispute that Quick is in fact heterosexual.

August 1993 a woman employee refused a male supervisor's request to bag him.

The majority of the 100 bagging incidents involving Quick occurred between January and September of 1991. During this time, Quick also saw at least one other male employee being bagged every day. In August 1991, Quick complained to supervisor Daniels about being bagged. No remedial action was taken by Daniels or Donaldson. After Daniels observed employees bag Quick on several occasions, Quick says Daniels told him that the next time somebody bagged him "to turn around and bag the shit out of them." The bagging incidents decreased after Quick was transferred to another department on September 3, 1991. Between that time and December 1992, Quick was bagged by a male co-worker on some six occasions.

Sometime during the fall of 1992, Schoen, the plant manager, instructed the supervisors to stop the bagging actions and reviewed with them the company's written sexual harassment policy. According to supervisor Musgrove, each supervisor then reviewed that policy with department employees and explained why the practice could not continue. One employee, David Ashburn, also stated that Donaldson circulated a memo around that time saying that bagging was harassment. After this, the bagging apparently ended.

Quick also claims that male co-workers assaulted him on two occasions. On August 23, 1991, one worker held Quick's arms, while another grabbed and squeezed Quick's left testicle, producing swelling and bruising. After Quick reported the assault to Daniels, Donaldson fired the employee who had held Quick's arms, but took no action against the other worker. The second assault occurred on September 13, 1991, when a co-worker punched Quick in the neck during an argument over a broken machine. Quick reported this incident to his supervisor at that time, Brett Musgrove, who did not react.

Quick alleges in addition that he was verbally harassed and falsely labeled a homosexual.  Male employees placed tags on Quick's forklift and belt loop which referred to a sexual act with a cucumber and stated "Pocket Lizard Licker" and "Gay and Proud."  In December 1992, a male co-worker wrote "queer" on Quick's work identification card.  Quick showed the inscription to his new supervisor, Daryl Marks, who did nothing.  Finally, in June 1993, while Quick was at a local bar, a co-worker called him a "fucking scab" for having withdrawn his union membership.

As a result of these actions, Quick obtained medical and psychological treatment, which he asserts will continue in the future.  He currently experiences a bobbing sensation in his left testicle due to the alleged assault and battery in August 1991.

In August 1993, Quick filed a charge of discrimination with the Iowa Civil Rights Commission, as well as a state tort action against Donaldson, Roger Daniels, and Brett Musgrove, alleging injuries due to the verbal and physical assaults by his co-workers and supervisors.  Quick amended his complaint in January 1994, adding two counts of sexual discrimination by Donaldson in violation of Title VII and the Iowa Civil Rights Act.[2]  Defendants removed the case to federal court in February 1994, and discovery began.  The parties consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Donaldson filed a motion for summary judgment in May 1995 on all claims, as did Musgrove and Daniels.

On August 4, 1995, the magistrate judge granted summary judgment for Donaldson on Quick's federal and state sex

---

[2]The Iowa Civil Rights Act provides that "[i]t shall be an unfair or discriminatory practice for any . . . [p]erson to . . . discriminate in employment . . . because of the . . . sex . . . of such . . . employee . . . ."  Iowa Code § 216.6.

4

discrimination claims and on a state law claim regarding a blood test it had ordered for Quick. The remaining state law claims against Donaldson and his two supervisors were dismissed without prejudice.[3]

The court reached a number of legal conclusions in the process of ruling on Donaldson's motion on the sex discrimination claim. It held that Title VII protects a male employee from discriminatory sexual harassment only where he can show an anti-male or predominantly female environment making males a disadvantaged or vulnerable group in the workplace and treating female employees differently and more favorably. Applying this test and ruling that only discrimination of a sexual nature is actionable under Title VII, the court dismissed his claim under the federal statute. It said there was no evidence that Donaldson had an anti-male or predominantly female environment, that females were treated differently, or that the bagging actions were sexual in nature. Although it acknowledged that Quick had been subject to unwelcome harassment by his co-workers, it found the cause was personal enmity or hooliganism, not his sex. The court also dismissed the state civil rights claim on the basis that Iowa courts would apply a similar test to the one used under Title VII.

On appeal, Quick argues that the magistrate judge employed an incorrect standard to judge his federal and state sex discrimination claims and that summary judgment was inappropriate because of disputed material facts. In addition, he contends that his state civil rights claim should be permitted to proceed in the Iowa courts in any event.

---

[3]After both parties filed separate motions to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), the magistrate judge vacated the dismissal and remanded the claims to state court.

5

Quick argues that summary judgment was granted on his Title VII claim based on an erroneous understanding of the law. Quick asserts that Title VII prohibits workplace sex discrimination against any individual, regardless of whether that person is part of a minority group. It was therefore error to rule that male employees are protected under Title VII only if they are members of a disadvantaged or vulnerable group, requiring proof of an anti-male work environment. He maintains it was also wrong for the district court to conclude that the harassment was not "of a genuine sexual nature" and not based on his sex. Quick reasons that since bagging at Donaldson was directed only at the area of male sexual organs, he would not have been subjected to it but for being male. He points to the absence of any evidence of female employees being bagged.

Donaldson apparently does not dispute that bagging was a pervasive practice at the plant, that Quick was bagged numerous times, that management was aware of it, and that it failed to take immediate and appropriate remedial action. It agrees with the district court, however, that harassment between heterosexual males is not actionable under Title VII unless the plaintiff can show an anti-male work environment.[4] Donaldson asserts that Quick failed to show such an environment because other males viewed bagging as

---

[4]There is no claim in this case that Title VII excludes all claims of same gender sex discrimination. The Supreme Court has not yet spoken on the issue, but several circuits have suggested that Title VII covers such claims. See Rowinsky v. Bryan Indep. Sch. Dist., 80 F.3d 1006, 1016 (5th Cir. 1996); Baskerville v. Culligan Intern. Co., 50 F.3d 428, 430 (7th Cir. 1995); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994), cert. denied, 115 S.Ct. 733 (1995); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 148 (2d Cir. 1993) (Van Graafeiland, J., concurring); Bundy v. Jackson, 641 F.2d 934, 942 n.7 (D.C.Cir. 1981); but see McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1196 (4th Cir. 1996); Garcia v. Elf Atochem North America, 28 F.3d 446, 448 (5th Cir. 1994).

mere horseplay.  It notes that the only evidence that males were the sole targets of bagging was Quick's deposition testimony that he was unaware of any female employees being bagged.  Donaldson argues Quick was harassed not because he is a male, but rather because he was unpopular.  It concludes that the district court properly dismissed Quick's Title VII claim.

A party is entitled to judgment as a matter of law only if it can show that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  We review a grant of summary judgment de novo.  Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir. 1993). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.  Id. at 249.  Rather, the court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence.  Id. at 248.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in Quick's favor.  Id. at 255.  "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate.  Id. at 250.

**A.**

Title VII prohibits "an employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Discrimination based on sex which has created a hostile

7

or abusive working environment violates Title VII. <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 66 (1986). In order to state a claim for sex discrimination based on a hostile environment, a plaintiff must show that:

> (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the employer] knew or should have known of the harassment and failed to take proper remedial action.

<u>Kopp</u>, 13 F.3d at 269.

The first factor, membership in a protected group, is satisfied by showing that the plaintiff employee is a man or a woman. <u>See</u> <u>Meritor</u>, 477 U.S. at 66-67. Congress did not limit Title VII protection to only women or members of a minority group. <u>See</u> <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 279-80 (1976). Rather, the broad rule of workplace equality under Title VII strikes "at the entire spectrum of disparate treatment of men and women in employment" in order to provide a workplace free of "discriminatory intimidation, ridicule and insult." <u>Harris v. Forklift Systems, Inc.</u>, 114 S.Ct. 367, 370 (1993) (citation omitted). Neither a man nor a woman is required to run a "gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living." <u>Meritor</u>, 477 U.S. at 67 (citations omitted). The term "sex" as used in Title VII has accordingly been interpreted to mean either "man" or "woman," and to bar workplace sexual harassment against women because they are women and against men because they are men. <u>See</u> <u>Rowinsky v. Bryan Indep. Sch. Dist.</u>, 80 F.3d 1006, 1016 (5th Cir. 1996); <u>Ulane v. Eastern Airlines, Inc.</u>, 742 F.2d 1081, 1085 (7th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1017 (1985); <u>Henson v. City of Dundee</u>, 682 F.2d 897, 903 (11th Cir. 1982).

8

The second element is that the employee was subject to "unwelcome sexual harassment." Kopp, 13 F.3d at 269. The type of conduct that may constitute sexual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. 29 C.F.R. § 1604.11(a). The harassment need not be explicitly sexual in nature, though, nor have explicit sexual overtones. Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1326 (8th Cir. 1994); Hall v. Gus Const. Co., Inc., 842 F.2d 1010, 1014 (8th Cir. 1988). Congress intended to define discrimination in the broadest possible terms, so it did not enumerate specific discriminatory practices nor "elucidate the parameter of such nefarious activities." Hall, 842 F.2d at 1014 (citation omitted). Since sexual harassment can occur in many forms, it may be evidenced by acts of physical aggression or violence and incidents of verbal abuse. Id.; Burns v. McGregor Electronic Industries, Inc., 989 F.2d 959, 964-65 (8th Cir. 1993) (sexual harassment based on vulgar and offensive epithets that were intensely degrading and insulting).

The "gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" Meritor, 477 U.S. at 68. Harassing conduct is considered unwelcome if it was "uninvited and offensive." Burns, 989 F.2d at 962. The question of whether particular conduct was unwelcome will turn largely on credibility determinations by the trier of fact. Meritor, 477 U.S. at 68. The proper inquiry is whether the plaintiff indicated by his conduct that the alleged harassment was unwelcome. Id.

The third required element is that the harassment complained of was based upon sex. Although there is little legislative history as to what discrimination "based on sex" means, the key inquiry is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 114 S.Ct. at 372 (Ginsburg, J. concurring); Stacks, 27 F.3d at 1326. Evidence that

9

members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment. Kopp, 13 F.3d at 269-70 (incidents of abuse involving primarily women satisfied requirement of gender based conduct). The motive behind the discrimination is not at issue because "[a]n employer could never have a legitimate reason" for creating or permitting a hostile work environment. Stacks, 27 F.3d at 1326.

The harassment must have also affected a term, condition, or privilege of employment in order to be actionable. This factor means that the workplace is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 114 S.Ct. at 370 (citation omitted). The fact that a particular group of employees may have found the conduct in question unobjectionable is not decisive. Burns, 989 F.2d at 962. "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive," Title VII is violated. Harris, 114 S.Ct. at 371.

Whether an environment is hostile or abusive cannot be determined by a "mathematically precise test"; it entails consideration of the entire record and all the circumstances. Id. There is no particular factor that must be present, but conduct that is merely offensive is insufficient to implicate Title VII. Id. at 370. Relevant considerations include

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id. at 370-71. A discriminatorily abusive work environment may exist where the harassment caused economic injury, affected the

10

employee's psychological well-being, detracted from job performance, discouraged an employee from remaining on the job, or kept the employee from advancing in his or her career. Id.

The final element in a hostile environment claim is that the employer failed properly to remedy the harassment it knew or should have known about. Sexual harassment by a co-employee is a violation of Title VII if the employer knew or should have known of the harassment and failed to take immediate and appropriate action. Burns, 989 F.2d at 966.

**B.**

The district court departed from these legal standards in fashioning the test it employed in ruling on Donaldson's summary judgment motion. Protection under Title VII is not limited to only disadvantaged or vulnerable groups. It extends to all employees and prohibits disparate treatment of an individual, man or woman, based on that person's sex. Harris, 114 S.Ct. at 370; Meritor, 477 U.S. at 67. The district court therefore erred in requiring Quick to show evidence of an anti-male or predominantly female work environment.

The district court also erred in determining that the challenged conduct was not of a genuine sexual nature and therefore not sexual harassment. The court concluded that neither bagging nor the physical attacks expressed sexual interest nor involved sexual favors or comments. A worker "need not be propositioned, touched offensively, or harassed by sexual innuendo" in order to have been sexually harassed, however. Burns, 989 F.2d at 964. Intimidation and hostility may occur without explicit sexual advances or acts of an explicitly sexual nature. Hall, 842 F.2d at 1014. Moreover, physical aggression, violence, or verbal abuse may amount to sexual harassment. Id.; Burns, 989 F.2d at 964-65. The bagging was aimed at Quick's sexual organs, his testicles were

11

squeezed so hard on one occasion that he almost passed out from the pain, he was punched in the neck, and he was verbally taunted with names such as "queer" and "pocket lizard licker." Whether or not these actions, when viewed in the totality of the circumstances, constituted prohibited sexual harassment remains a genuine issue of material fact for trial. See Burns, 989 F.2d at 965.

The district court also incorrectly concluded that the alleged harassment was not gender based because it found the underlying motive was personal enmity or hooliganism. A hostile work environment is not so easily excused, however. Stacks, 27 F.3d at 1326. The fact that Quick might have been unpopular could not justify conduct that otherwise violated Title VII. Burns, 989 F.2d at 965 ("[t]here is no excuse in any work environment" for subjecting a worker to such abuse "even if the harasser[s] and plaintiff did not like each other"). In any event, fact-finding was not appropriate on the summary judgment motion. See Anderson, 477 U.S. at 248-49.

The proper inquiry for determining whether discrimination was based on sex is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 114 S.Ct. at 372 (Ginsburg, J. concurring). Although Donaldson claims that female employees could theoretically be bagged, our review is limited to the record developed below. Kopp, 13 F.3d at 269. That record contains only incidents of bagging male employees. A female employee was apparently once asked to bag a male supervisor, but she refused. On this record, with all facts and inferences drawn in Quick's favor, a fact-finder could reasonably conclude that the treatment of men at Donaldson was worse than the treatment of women. Thus, Quick has raised a genuine issue of material fact as to whether the alleged harassment was gender based. See id. at 269-70.

12

Finally, the district court did not undertake the proper analysis in determining whether Quick had established the remaining two elements of a hostile environment claim. The court did not consider whether Donaldson knew or should have known of the harassment and failed to take appropriate remedial measures. See Kopp, 13 F.3d at 269. It also summarily concluded that there was no evidence to raise a question of material fact "that the unwelcome physical contacts discriminatorily affected Quick's compensation, terms, conditions, or privileges of employment."

None of the suggested factors set forth in Harris were considered by the district court to determine whether the alleged conduct was "sufficiently severe or pervasive" to affect Quick's conditions of employment. Harris, 114 S.Ct. at 370. These factors include the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, whether it unreasonably interfered with Quick's work performance, whether it caused economic injury, and whether it affected his psychological well-being. Id. at 370-71. According to Quick, the bagging was a daily practice in at least one department, and he received physical and psychological treatment as a result of the harassment. Although no single factor is required to state a claim for sexual harassment, each may be relevant in deciding whether a hostile environment existed at Donaldson. Id.

In conclusion, since the district court erred in its application of Title VII law and since there were genuine issues of material fact, the summary judgment in Donaldson's favor must be reversed. See Anderson, 477 U.S. at 251-52.

**III.**

Quick also contends that the district court improperly dismissed his state civil rights claim for sex discrimination on the basis that Iowa courts follow federal interpretation of Title

13

VII in application of the state law. Quick argues that he should be allowed to proceed in state court with his state civil rights action regardless of what happens with the appeal on his Title VII claim. Donaldson responds that Quick failed to raise this issue in the district court and that federal courts may decide his state discrimination law claim.

Federal cases provide the basic framework for deciding sex discrimination cases under the Iowa civil rights statute, <u>Iowa State Fairgrounds Security v. Iowa Civil Rights Comm.</u>, 322 N.W.2d 293, 296 (Iowa 1982), and federal courts may decide a state law claim based on a judicial estimate of what the Iowa Supreme Court would do if confronted with the same issue. <u>Heeney v. Miner</u>, 421 F.2d 434, 439 (8th Cir. 1970). Since Quick's Title VII claim was improperly dismissed, summary judgment on his state claim under the Iowa Civil Rights Act was also inappropriate.

The judgment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

NANGLE, District Judge, dissenting.

I respectfully dissent. I believe that the majority opinion sets a precedent for improperly expanding Title VII to cover any form of harassment experienced in the workplace. Although a cause of action may lie under various state laws, I do not believe that a cause of action exists under Title VII for the type of conduct that is alleged to have occurred in this case.[1]

---

[1]Donaldson noted at oral argument that it was not arguing that same sex sexual harassment is never covered by Title VII. In its brief, however, Donaldson contends that there is not a cause of action for a heterosexual male plaintiff who claims to be a victim of gender discrimination by heterosexual co-employees of the same gender where plaintiff did not show an anti-male work environment. Thus, I consider the issue of whether a cause of action lies for such harassment to have been sufficiently raised on appeal.

14

In _McWilliams v. Fairfax County Board of Supervisors_, 72 F.3d 1191 (4th Cir. 1996), _petition for cert. filed_, 64 U.S.L.W. 3839 (U.S. June 10, 1996)(No. 95-1389), the Court held that harassment against a heterosexual male by his heterosexual male co-workers did not state a hostile work-environment sexual harassment claim under Title VII. McWilliams' co-workers purportedly subjected him to both verbal taunts and physical assaults of a sexual nature. _Id._ at 1193. The Court reasoned that such harassment was not "because of the [claimant's] sex". _Id._ at 1195. "As a purely semantic matter, we do not believe that in common understanding the kind of shameful heterosexual-male-on-heterosexual-male conduct alleged here (nor comparable female-on-female conduct) is considered to be `because of the [target's] `_sex_''." _Id._ at 1195-96. The Fourth Circuit offered several alternative reasons that a heterosexual could be targeted for such harassment by other heterosexuals including characteristics of the victim (such as known prudery or shyness), and characteristics of the perpetrators (such as perversion, insecurity or vulgarity). _Id._ at 1196. "But to interpret Title VII to reach that conduct when only heterosexual males are involved as harasser and victim would be to extend this vital statute's protections beyond intentional discrimination `because of' the offended worker's `sex' to unmanageably broad protection of the sensibilities of workers simply `in matters of sex.'" _Id._

The obvious distinction between _McWilliams_ and this case is that there is no evidence that other heterosexual males were subject to the same harassment in _McWilliams_ while, in the instant case, many other heterosexual males were exposed to "bagging" at Donaldson. Quick may be more like McWilliams, however, than he appears to be at first blush. The majority opinion notes that Quick claims that he was assaulted by male co-workers on two occasions. On one occasion, workers purportedly grabbed Quick's testicle producing swelling and bruising and, on another occasion, Quick alleges that he was punched in the neck during an argument.

15

In addition, Quick asserts that he was verbally harassed, labeled a homosexual, and called a "fucking scab" by a co-worker for having withdrawn his union membership. Accordingly this case, upon closer examination, appears to be similar to McWilliams in the sense that heterosexual males singled out another unpopular heterosexual male for harassment. Although this conduct is reprehensible, it does not state a hostile work environment sexual harassment claim under Title VII.[2]

All of the Eighth Circuit cases relied on by the majority involve the traditional scenario of a male supervisor or male co-workers harassing female employees. See Stacks v. Southwestern Bell Yellow Pages, 27 F.3d 1316 (8th Cir. 1994) (male supervisor harassing female subordinate); Kopp v. Samaritan Health System, Inc., 13 F.3d 264 (8th Cir. 1993) (male doctor harassing female technician); Burns v. McGregor Electronic Industries, Inc. 989 F.2d 959 (8th Cir. 1993) (female employee harassed by male employer); Hall v. Gus Const. Co., Inc., 842 F.2d 1010 (8th Cir. 1988) (male co-workers harassing female employees). It is important, however, that we distinguish between these type of cases and the case presently before the Court. The "because of sex" element is implied in these cases, not because there is a predominantly male or anti-female environment, but because "sexual behavior directed at a woman [by a man] raises the inference that the harassment is based on her sex". Burns v. McGregor Electronic Industries, Inc., 955 F.2d 559, 564 (8th Cir. 1992). Such an inference is not raised when heterosexuals of one gender harass other heterosexuals of the same gender. This is because in the traditional situation,

[t]he causal link between the supervisor's conduct and

---

[2]Like the McWilliams court, I do not address the viability of heterosexual-on-heterosexual claims involving discrimination through adverse employment decisions nor do I address the viability of any same-sex discrimination claim where victim, oppressor, or both, are homosexual or bisexual. McWilliams, 72 F.3d at 1195 n.4.

16

> the victim's harassment is the victim's gender. . . . In a same-gender sexual harassment case, however, conduct of a sexual or gender-oriented nature can not be presumed to be discriminatory. . . . When the alleged offender and the alleged victim share the same gender, similar sexually suggestive words and acts can take on a whole other meaning.

Easton v. Crossland Mortgage Corp., 905 F.Supp. 1368, 1382-83 (C.D.Cal. 1995).  In this case, the "bagging" incidents would surely be viewed in a different light if male employees were making similar gestures and touches toward female employees.  When this conduct occurs between heterosexual males one is struck by the vulgarity of these actions.  If this conduct were to occur to females by males, however, the impression is entirely different and the inference of sex discrimination is raised.

The fundamental difference between this dissent and the majority seems to be who should decide whether a cause of action lies for such conduct - the court or the jury.  I contend that the question is purely a question of law for the court because it is, at its essence, a question of statutory interpretation.[3]  See United States v. Moore, 38 F.3d 977, 979 (8th Cir. 1994) ("[T]he task of statutory interpretation is one best placed in the hands of the trial judge").  The majority seems content to let the jury decide based upon an application of factors used in traditional

---

[3]There is not much legislative history to aid statutory interpretation in this instance.  Representative Howard Smith, a foe of civil rights legislation, added "sex" as a prohibited basis of discrimination to Title VII at the last minute in an apparent attempt to defeat the bill.  Obviously, the effort failed and there is little legislative history to guide the courts in interpreting discrimination based on sex.  Meritor Savings Bank v. Vinson, 477 U.S. 57, 63-64 (1986) (citing 110 Cong. Rec. 2577-84 (1964)); Ulane v. Eastern Airlines, 742 F.2d 1081, 1085 (7th Cir. 1984); Charles R. Calleros, The Meaning of "Sex": Homosexual and Bisexual Harassment under Title VII, 20 Vermont L.Rev. 55 (1995).  But cf. Sommers v. Budget Marketing, 667 F.2d 748, 750 (8th Cir. 1982) (it is "generally recognized that the major thrust of the "sex" amendment was towards providing equal opportunities for women").

17

hostile work-environment sexual harassment claims.  I cannot agree with this approach.  Accordingly, I dissent and would affirm the judgment of the district court for the reasons stated herein.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

18