# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-3325 / 01-3444

_____

| | | |
|---|---|---|
| Brenda Jaros, | * | |
| | * | |
| Cross-Appellant / Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| LodgeNet Entertainment Corp., a | * | |
| South Dakota corporation, | * | |
| | * | |
| Appellant / Cross-Appellee. | * | |

_____

Submitted: June 11, 2002
Filed: July 9, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Brenda Jaros brought this Title VII action against her former employer, LodgeNet Enterprises Corp. A jury found that Jaros had been sexually harassed by her supervisor, a senior LodgeNet executive, and that she was constructively discharged when the company failed to respond adequately to her complaints. LodgeNet contends on appeal that there was insufficient evidence for the jury to find

that Jaros was constructively discharged, that the district court[1] abused its discretion in evidentiary rulings, and that the court erred in the instruction on its affirmative defense. We affirm.

Jaros was hired in March 1998 as an executive secretary to Ted Racz, LodgeNet's vice president for sales. According to Jaros, Racz began harassing her soon after she was hired. She testified that he boasted about his sexual abilities, commented frequently on her body type and appearance, and suggested that they watch pornographic movies and engage in sex with one another. She also testified that he made explicit speculations about her sex life and that he once tried to unzip her sweater.

LodgeNet, a company in the business of providing televised movie services for hotels, has a sexual harassment policy. The policy directs an employee complaining of harassment to take the problem to her supervisor or to the human resources department. LodgeNet promises to investigate complaints promptly, discipline those responsible for harassment, and not "tolerate any reprisal taken against those involved in reporting or investigating a claim of sexual harassment." The policy is reviewed with new employees during orientation and is included in the copy of the company handbook given to every employee. Jaros testified that she did not remember any discussion of the policy during her orientation, but she signed a form at that time which contained an acknowledgement that she had been informed about it.

Jaros testified that she became skeptical of LodgeNet's willingness to act on complaints of sexual harassment because the company had taken no action on a previous complaint she made. In May 1998 Jaros received a late night phone call from Chuck Siemonsma, another employee at LodgeNet whom she had known

---

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

previously. She considered the call sexual harassment and reported it to Racz. She testified that he laughed and said, "It was only a phone call" and did nothing about it. During a subsequent company golf event at which Jaros served as photographer, Siemonsma and another employee grabbed their crotches when she took their picture. After Racz became involved in a dispute with Siemonsma, he finally reported the offending call to Jaros to the human resources department. Racz told Jaros he had reported it and that she would be contacted by human resources, but she never was. Although Siemonsma was reprimanded, no one ever informed Jaros that he had been.

In December 1998 and January 1999,[2] Jaros met several times with Don McCoy, the company's director of human resources, and told him that her supervisor, Racz, was subjecting her to sexual harassment. She reported that the harassment was "ten times worse" than Siemonsma's behavior. When McCoy asked her for details about what Racz had said or done, Jaros inquired whether the information she provided would remain confidential. McCoy told her that he would have to investigate and talk with both Racz and upper management. Jaros told McCoy that she could not cooperate because she was afraid of retaliation by Racz, who she feared would make her life "a living hell." She testified that McCoy did nothing to reassure her that she would not be subject to retaliation. Although McCoy gave conflicting testimony on that point, it is undisputed that he never reviewed LodgeNet's sexual harassment policy with Jaros. At their final meeting Jaros again declined to provide details, and McCoy once more refused to take any action without them. Jaros testified that she told McCoy she would have to address the problem herself and that McCoy encouraged her to confront Racz.

Within days of the last meeting with McCoy, Jaros handed him and Racz a

---

[2]Jaros testified that they met on December 21, again the following week, and a third time on January 7. McCoy testified that they met for the first time on January 7 and a second time on January 15.

letter of resignation. During the next two weeks Jaros met twice with senior LodgeNet management and gave them details of the harassment. They began an investigation, but they did not act to remove Jaros from Racz's direct supervision or attempt to discourage her from resigning. LodgeNet's investigation eventually turned up comments Racz had made to other women employees about their bodies and their appearance. He received a written warning and later left the company.

Jaros sued LodgeNet under Title VII of the Civil Rights Act of 1964, <u>see</u> 42 U.S.C. § 2000e-2(a)(1), for subjecting her to sexual harassment and for constructively discharging her.[3] She claimed both compensatory and punitive damages. The district court granted summary judgment to LodgeNet on her claim for punitive damages, and the rest of the case went to trial before a jury.

Both parties filed motions in limine before trial. Jaros successfully sought to exclude evidence LodgeNet wanted to offer about her workplace behavior, including evidence that she had used swear words, worn suggestive clothing, and once said that she liked to pick up men in bars for sex. Although LodgeNet's attorney indicated that it might make an offer of proof at trial as to some of this testimony, it never did. LodgeNet also moved unsuccessfully to block the evidence Jaros offered about Siemonsma's late night phone call and his behavior on the golf outing. The court admitted this evidence as relevant on the question of whether Jaros had reasonably feared that her complaint would result in inaction or retaliation, and the jury was given a limiting instruction.

Although Racz was apparently available to testify at trial, LodgeNet did not call him as a witness. Instead it sought to introduce notes he had written after he was asked about Jaros' allegations. The notes set out Racz's version of what had

---

[3]Jaros also brought state law claims for intentional infliction of emotional distress and breach of contract, but they were dismissed on summary judgment.

happened, denied that he had harassed Jaros, and made allegations about her own conduct. LodgeNet first attempted to introduce the notes to test whether Jaros could recognize Racz's handwriting and later to illustrate the extent of its investigation. The court excluded them because the jury already had evidence that Racz denied the allegations made against him and because any testimonial statements in the notes should be subject to cross examination.

The jury found that Jaros had been discriminated against and constructively discharged. It awarded her $500,000 in damages, which the court later reduced to $300,000, the maximum amount recoverable under Title VII. See 42 U.S.C. § 1981a(b)(3)(D). LodgeNet moved for judgment as a matter of law or in the alternative for a new trial, contending that the court abused its discretion in some evidentiary rulings, that there was insufficient evidence to find constructive discharge, and that it should have been able to raise an affirmative defense under Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The court denied both motions, and LodgeNet appealed from the amended judgments. Although Jaros filed a cross appeal of the dismissal of her punitive damages claim, counsel indicated at oral argument that the purpose of the filing was only to maintain her claim in the event LodgeNet were successful on appeal.

LodgeNet argues on appeal that the court abused its discretion by excluding the notes written by Racz, as well as evidence that Jaros used swear words, wore suggestive clothes, and had once talked about meeting men at bars. LodgeNet also attacks the admission of evidence related to Siemonsma. The district court excluded Racz's notes as cumulative and confusing, especially since he did not testify and was not available for cross examination. That ruling was not improper under Federal Rule of Evidence 403, and the evidence also presented hearsay issues. Language used by Jaros was not shown to be an invitation for sexual harassment, cf. Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1010-1011 (7th Cir. 1994), or to be more probative than prejudicial. Fed. R. Evid. 403. The comment about meeting

men in bars was not made to Racz, and he did not learn about it until after Jaros had left LodgeNet, substantially undercutting its probative value. Jaros was never admonished by her employer for dressing inappropriately, and evidence relating to her dress was excluded under Rule 412 as not being more substantially probative than prejudicial. It could also have been excluded under Rule 403, and LodgeNet never made it clear in the record exactly what the evidence was and failed to make a proper offer of proof. See Fed. R. Evid. 103(a)(2), (d). Finally, the evidence regarding Siemonsma was relevant as to whether Jaros reasonably feared inaction by LodgeNet or retaliation for reporting on Racz. After carefully examining the record, we conclude that the district court did not abuse its discretion in these evidentiary rulings. See Anderson v. Nissan Motor Co., 139 F.3d 599, 602 (8th Cir. 1998).

LodgeNet contends that it was entitled to judgment as a matter of law because the evidence presented by Jaros was insufficient to show constructive discharge. Our review is de novo. Blackmon v. Pinkerton Security & Investigative Serv., 182 F.3d 629, 635 (8th Cir. 1999). The district court's decision to deny a motion for judgment as a matter of law is reversed only when the evidence is susceptible to no reasonable interpretation supporting the verdict, id., and the evidence is to be viewed in the light most favorable to the prevailing party. Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998).

An employee is constructively discharged when working conditions are made so objectively intolerable that she is forced to quit. Jackson v. Ark. Dep't of Educ., Vocational, & Technical Educ., 272 F.3d 1020, 1026 (8th Cir. 2001), cert. denied, __ U.S. __, 122 S. Ct. 2366 (2002). To be liable, an employer must have intended or at least reasonably foreseen that the employee would quit as a result of the unlawful working conditions it created, and the employee must have given it a reasonable opportunity to fix the problem. Id. at 1026-27. LodgeNet argues that Jaros did not give it a chance to respond to her complaint because she delayed reporting Racz's conduct and refused to provide details to McCoy. See id., 272 F.3d at 1027 (only

notified management nine months after harassment started and refused to participate in formal reporting procedure). It contends that her fear of retaliation was not objectively reasonable and offers as an example the absence of any retaliation after she complained about Siemonsma.

The facts in this case distinguish it from <u>Jackson</u> or other cases cited by LodgeNet. <u>See, e.g., Barrett v. Applied Radiant Energy Corp.</u>, 240 F.3d 262, 267 (4th Cir. 2001). Jaros told McCoy, the director of human resources, that she was being sexually harassed by her supervisor, a senior executive, and gave his name. She testified that she told McCoy she could not reveal more details because she was afraid that Racz would retaliate against her, and there was evidence from which the jury could find this fear justified. Racz was a senior corporate manager, and to her knowledge the company had done nothing in response to her complaint about Siemonsma. She testified that McCoy did nothing to lessen her fear of retaliation. Although McCoy testified at trial that he reassured her that she would be protected if she supplied details, he was impeached by his deposition testimony to the contrary.

Conflicts in the evidence are for the jury to decide. <u>See</u> <u>Hathaway v. Runyon</u>, 132 F.3d 1214, 1225 (8th Cir. 1998). McCoy did not offer to remove Jaros from Racz's supervision, proceed to investigate the matter, make any report to upper management, or even discuss LodgeNet's harassment policy. This is in sharp contrast to <u>Jackson</u> where the employer took prompt action to address the employee's concerns. 272 F.3d at 1023-26. The jury was entitled to find from the evidence that Jaros' fear of retaliation was reasonable, that LodgeNet's response to her claim was inadequate and ineffective, and that she quit only after giving it a reasonable chance to work out the problem. There was sufficient evidence to support the jury's finding that Jaros was constructively discharged.

Finally, LodgeNet challenges the court's instructions on its affirmative defense under Title VII. An employer is liable for sexual harassment by a supervisor against

a subordinate if the harassment results in a "tangible employment action" against the subordinate. Burlington Indus, Inc. v. Ellerth, 524 U.S. 742, 760 (1998). In the absence of a tangible employment action, an employer may raise an affirmative defense if it can show that it exercised reasonable care to prevent and correct the harassment and that the employee unreasonably failed to take advantage of these preventative or corrective opportunities. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The jury was instructed that it could not consider this affirmative defense if it found that Jaros had been constructively discharged. LodgeNet objected, arguing that constructive discharge is not a tangible employment action. The district court did not err in its instruction, since constructive discharge constitutes a tangible employment action which prevents an employer from utilizing the affirmative defense. Jackson, 272 F.3d at 1026.

Accordingly, we affirm the judgment of the district court and dismiss the cross appeal as moot.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.