Janet Faye NELSON, Plaintiff,

v.

**WAHPETON PUBLIC SCHOOL DISTRICT, Clark Williams, and Mike Connell, Defendants.**

Civil File No. A3–02–112.

United States District Court, D. North Dakota, Southeastern Division.

March 29, 2004.

Susan L. Ellison, Ellison Law Office, P.C., Fargo, ND, for plaintiff.

Gary R. Thune, Jonathan P. Sanstead, Pearce & Durick, Bismarck, ND, for defendant.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ERICKSON, District Judge.

Before the Court is a motion by Defendant for summary judgment (doc. # 24). Plaintiff filed a brief in opposition (doc. # 25). The Court held a hearing on April 6, 2004.

### SUMMARY OF DECISION

Janet Nelson (Nelson) alleges that her supervisor, Clark Williams (Williams), touched her breast, put his arm around her, rubbed her back, rubbed up against her, slapped her on the butt, complimented her as being "hot," unlocked the door and walked in on her in the bathroom, and made sexual comments directed at her. This conduct qualifies as sexual harassment, and Nelson indicated that it was unwelcome. Whether Nelson was constructively discharged involves disputed questions of fact for the jury. Summary judgment is not appropriate on the hostile work environment claim based on Williams' alleged conduct.

The conduct Nelson attributes to her coworkers is not based on gender nor is it sufficiently severe or pervasive. Also, her employer did not know nor should it have known that her coworkers were allegedly sexually harassing her. There is no claim for a hostile work environment based on the conduct of her coworkers.

Summary judgment is not appropriate with the remaining claims because questions of material fact remain. For the retaliation claim, similar fact issues exist that are present in the hostile work environment claim involving Williams' conduct. For the intentional infliction of emotional distress claim, the conduct alleged and Nelson's resulting injuries do support this claim. For the negligent supervision claim, Nelson's allegations support this claim because the District was informed of Williams' conduct and failed to act. For the assault and battery claim, there is a question of material fact regarding the intent behind Williams' alleged physical contact with Nelson.

### FACTUAL BACKGROUND

In October of 1989, the Wahpeton Public School District (District) hired Nelson to work as an assistant cook at the high school. At all times relevant to this lawsuit, Mike Connell (Connell) was the superintendent of the District, and Williams was the principal of the high school where Nelson worked.

During the time that Nelson worked at the high school, she alleges that Williams sexually harassed her. In the spring of

2000, while meeting with Connell about other matters, Nelson mentioned that Williams had sexually harassed her. (Nelson Aff. ¶ 5) Connell admits that Nelson told him that Williams had sexually harassed her. (Connell Dep. at 34) Nelson then alleges that she described several incidents of harassment including Williams slapping her on the butt, rubbing up against her, rubbing her back, and touching the side of her breast. (Nelson Aff. ¶ 5; Nelson Dep. at 70) She also alleges that she told Connell about three separate incidents when Williams unlocked the bathroom door and entered when she was using the bathroom. (*Id.*) Nelson further alleges that she told Connell about a variety of sexually-related comments Williams made to her and that he told her sexual jokes. (*Id.*)

Connell alleges that he asked Nelson to tell him all about the harassment, but she refused. (Connell Dep. at 35) Nelson alleges that Connell asked her to file a formal complaint, but she refused. (Nelson Aff. ¶ 5)

After this Spring 2000 meeting, Connell told Williams that Nelson had made an allegation of sexual harassment against him. (Williams Dep. at 48) From this conversation, Williams decided that he should keep his distance from Nelson. (*Id.*) However, after that Spring 2000 meeting, Nelson alleges that Williams' behavior continued. (Nelson Aff. Ex. B at 2–3) This behavior included Williams putting his arm around her, touching the side of her breast, touching her shoulder, staring at her, rubbing against her, slapping her on the butt, rubbing her back, and making sexually suggestive comments. (*Id.* at 2–5)

Nelson also alleges that her coworkers sexually harassed her. She alleges that she was uncomfortable when her coworkers would tell sexually explicit jokes. (Nelson Aff. ¶ 19) Her coworkers made sexual comments about cucumbers, carrots, and bananas, and they would comment about Nelson's sex life with her husband. (Nelson Aff. Ex. B at 13–14) Her coworkers also teased her about being nice to the students. (*Id.* at 14)

In August of 2001, Nelson filed a formal sexual harassment complaint. The District told Williams not to have any contact with Nelson pending the completion of an investigation of the complaint. At the time she filed the formal complaint, Nelson took sick leave and never returned to work. In July 2002, the District offered Nelson a cook position at another school, but she refused.

## ANALYSIS

A party is entitled to summary judgment only if she can show that no genuine issue of material fact exists. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376 (8th Cir.1996). A court views the facts in the light most favorable to the non-moving party, but mere allegations are insufficient to defeat summary judgment. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). Summary judgment should seldom be granted in employment discrimination cases. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994).

### I. Hostile Work Environment

█ To establish a claim of a hostile work environment pursuant to Title VII, a claimant must establish that a) she is a member of a protected group; b) she was subject to unwelcome sexual harassment; c) the harassment was based on sex; d) the harassment affected a term, condition, or privilege of employment; and e) the employer knew or should have known of the harassment and failed to take proper remedial action. *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000).

The protected group includes women, so Nelson meets the first criteria. *Quick*, 90 F.3d at 1377.

■ The second criteria requires that the sexual harassment was "unwelcome." *Id.* Harassing conduct is considered unwelcome if it was uninvited and offensive. *Id.* at 1378 (quoting *Burns v. McGregor Electronic Indus., Inc.*, 989 F.2d 959, 964–65 (8th Cir.1993)). Deciding whether the conduct was uninvited or offensive will largely turn on credibility determinations made by the trier of fact. *Id.* "The proper inquiry is whether [the plaintiff] indicated by [her] conduct that the alleged harassment was unwelcome." *Id.*

The type of conduct that will constitute sexual harassment includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Quick*, 90 F.3d at 1377 (citing 29 C.F.R. § 1604.11(a) (1996)). However, the conduct does not have to be explicitly sexual in nature or have explicit sexual overtones. *Id.*

■ The third criteria is that the harassment must be based on sex: *Id.* at 1378. "Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment." *Id.* (citing *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269–70 (8th Cir.1993)).

■ The fourth criteria is that the harassment affected a term, condition, or privilege of employment. Id. This requires a plaintiff to demonstrate that the alleged harassment was so severe or pervasive that it affected her job. *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir.1999). Title VII doesn't require asexuality or androgyny in the workplace; it only prohibits behavior that is so objectively offensive that it alters the conditions of the victim's employment. *Id.* (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). The behavior is objectively offensive if a reasonable person would find the work environment hostile or abusive. *Id.* (quoting *Oncale*, 523 U.S. at 81, 118 S.Ct. 998). A term, condition, or privilege of employment is affected when the harassment causes economic injury, affects the employee's psychological well-being, detracts from job performance, discourages the employee from remaining on the job, or keeps the employee from advancing in her career. *Quick*, 90 F.3d at 1378.

■ The final criteria is that the employer failed properly to remedy the harassment it knew or should have known about. *Id.* As long as no tangible employment action has been taken against the plaintiff, an employer may raise the following affirmative defense: "a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). When assessing the reasonableness of an employer's remedial actions, a court may look at

> the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment.

*Stuart*, 217 F.3d at 633 (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir.1999)).

A. Supervisor

 Nelson alleges that she would not shower or brush her teeth, and she gained a lot of weight in order to be unattractive. (Nelson Aff. ¶ 21) She hoped that by doing these things Williams would stop harassing her. (*Id.*) She also would set out the cheese and meat· ahead of time in the kitchen so that Williams wouldn't have to spend much time in the kitchen with her making his sandwich. (*Id.*) Nelson complained to Connell in March 2000 about Williams' conduct, and she filed a formal complaint in August 2001. In addition, Nelson alleges that Williams' conduct was not welcomed by her. Whether Nelson is credible in this regard will be for the jury to decide. *Quick*, 90 F.3d at 1377. Nelson has alleged sufficient facts to support a finding that Williams' conduct was unwelcome for purposes of summary judgment.

A supervisor·who pats a female employee on the back, brushes up against her, and tells her she smells good presents sufficient facts to constitute sexual harassment. *Rorie v. United Parcel Serv., Inc.;* 151 F.3d 757, 762 (8th Cir.1998). Defendants do not dispute that, assuming the allegations are true, Williams' conduct does constitute sexual harassment. Nelson's allegations include several different kinds of touching, sexual comments· including comments that she looked "hot," and walking in on her while she was in the bathroom. This conduct does constitute sexual harassment. *Quick*, 90 F.3d at 1377 (citing 29 C.F.R. § 1604.11(a)).

Regarding the third criteria, Defendants do not allege that Williams slapped any male employees on the butt or that he rubbed up against any male employees. This behavior was only directed at Nelson, and Williams also allegedly slapped other female employees on the butt. Since his alleged behavior was only directed at women, this is sufficient to demonstrate that the harassment was based on gender. *Id.* (citing *Kopp*, 13 F.3d at 269–70).

On the fourth criteria, Nelson took an extended period of sick leave after filing her formal complaint. This had an economic impact on her since she had to use up her accrued sick leave. See *Quick*, 90 F.3d at 1378 (stating that a term, condition, or privilege of employ is affected when there is economic injury). Nelson also alleges that a term, condition, or privilege of employ was affected because she suffered psychological injuries from the harassment. *Id.* Defendants argue that Nelson's psychological ailments are the result of factors other than the alleged harassment. Whether Nelson suffered from any psychological ailment and what caused any ailment are questions for the jury. Even if a plaintiff hasn't suffered a tangible psychological injury, a term, condition, or privilege of her employ may still be affected. *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997). For the purposes of summary judgment, Nelson has alleged sufficient facts to demonstrate that a term, condition, or privilege of employ was affected.

 For the final criteria, Nelson argues that Defendants took a tangible employment action against her, so they can't raise the affirmative defense. Nelson argues that she was constructively discharged. See *Jackson v. Arkansas Dep't of Educ.,* 272 F.3d 1020, 1026 (8th Cir. 2001) (stating that constructive discharge is a tangible employment action). Constructive discharge occurs when an employee's working conditions are so objectively intolerable that she is forced to quit. *Jaros v. LodgeNet Entm't Corp.,* 294 F.3d 960, 965 (8th Cir.2002). Working conditions are objectively intolerable when a reasonable person would find them intolerable. *Jackson*, 272 F.3d at 1026. To be liable, an employer must have intended or

at least reasonably foreseen that the employee would quit as a result of the unlawful working conditions it created. *Jaros*, 294 F.3d at 965. Before an employee can claim constructive discharge, she has to give her employer a reasonable chance to work out the problem. *Duncan v. General Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002) (quoting *Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir.1997)).

Connell agrees that Nelson told him about the sexual harassment in March 2000. (Connell Dep. at 31–35) After that point, Nelson and Connell's stories differ. Nelson alleges that she told Connell some specific details of the harassment, and Connell alleges that she only stated that Williams had harassed her. After being told about this harassment, Connell did not offer to remove Nelson from Williams' supervision, he did not proceed to investigate the matter, nor did he discuss the District's sexual harassment policy with her. See *Jaros*, 294 F.3d at 966 (suggesting actions an employer could take after being informed of sexual harassment). If the jury finds Nelson's testimony credible, there is sufficient evidence for them to determine that Nelson was constructively discharged. See *id.* (stating that there was sufficient evidence for a jury to find that the employee was constructively discharged when the employee complained to the director of human resources about her supervisor sexually harassing her and the director did not take any action). Viewing the evidence in the light most favorable to Nelson, she was constructively discharged.

Nelson has met all the elements of a case of sexual harassment based on the conduct of her supervisor. The District failed to take remedial action when it was informed of this harassment. Therefore, summary judgment is not appropriate on this claim.

**B. Coworkers**

 Nelson also alleges that she was subjected to sexual harassment from her coworkers. All of this conduct was in the form of comments with sexual innuendos and jokes of a sexual nature. Nelson does not allege that there was any kind of unwelcome physical contact from her coworkers.

Title VII requires that the harassment be based on gender. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Insults or demeaning remarks directed at the plaintiff does not become a Title VII action merely because the plaintiff is a member of a protected class. *Id.* Nelson does not refer to any specific instances where jokes about sex or sexual comments made by coworkers were made to her because of her gender. Nelson's affidavit and Exhibit B indicate that her coworkers made these comments generally, and if they singled out Nelson occasionally it was because she would become embarrassed. (Nelson Aff. ¶ 19; Nelson Aff. Ex. B at 13) Her coworkers teased her about not knowing about slang involving sexual references. (Nelson Aff. Ex. B at 15) The fact that her coworkers insulted her for being nice to students also has nothing to do with Nelson's gender. Since her coworker's conduct was not based on gender, summary judgment is appropriate. *Quick*, 90 F.3d at 1378.

Nelson's claim relating to her coworker's conduct also fails because it was not sufficiently pervasive or severe. " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted). Nelson has made no allegation against her coworkers that she was "inappropriately

touched, propositioned, flirted with, taunted, or even ogled." *Hartsell*, 123 F.3d at 773. While discussions by her coworkers may have included, in her opinion, excessive talk related to sex, this is insufficient to allege a violation of Title VII. *Id.*

A final, independent reason why this claim fails is that Nelson did not prove that the District knew or should have known about the alleged harassment from her coworkers and failed to take prompt and remedial action reasonably calculated to end the harassment. *Stuart*, 217 F.3d at 633. In Stuart, the Court affirmed summary judgment by finding that the plaintiff had not complained about particular acts, which meant the employer did not know and could not be charged with the responsibility of knowing about those incidents. *Id.* Nelson never alleges that she complained to anyone about her coworkers' conduct. The first time she mentions her coworkers is in her Department of Labor complaint. The Court finds that the District did not know and can't be charged with the responsibility of knowing about incidents involving Nelson's coworkers. See *id.*

The Court finds that there are no questions of material fact on the issues of whether the coworkers' conduct was based on gender or whether what they said was sufficiently severe or pervasive. In addition, Nelson never told the District about her coworkers' alleged conduct to allow it to take any action. Therefore, summary judgment is appropriate on this claim.

## II. Retaliation Claim

■ To establish a claim of retaliation, Nelson must demonstrate the following factors: 1) she filed a charge of harassment or engaged in other protected activity; 2) her employer subsequently took an adverse employment action against her; and 3) the adverse action was causally

linked to her protected activity. *Scusa*, 181 F.3d at 968. If the plaintiff meets this prima facie showing, then the burden shifts to the employer to articulate a valid, nondiscriminatory reason for its actions. *Cross v. Cleaver*, 142 F.3d 1059, 1071–72 (8th Cir.1998). If the employer meets that burden, then the presumption of retaliation disappears. *Id.* at 1072.

■ Nelson alleges that she complained about Williams' behavior in March 2000. Nelson alleges that the District took two adverse employment actions against her based on that complaint. First, it refused to give her a teacher assistant position she applied for, and Nelson argues that her working conditions became so objectively intolerable that she was constructively discharged. Whether the decision on the teacher assistant position is causally linked to Nelson's complaint will require a credibility determination by the jury on the District's proffered reason. The substance of Nelson's complaint in March 2000 and whether she was constructively discharged also involve questions of material fact discussed earlier. Therefore, this claim is not subject to disposition by summary judgment.

## III. Intentional Infliction of Emotional Distress Claim

■ To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that there was extreme and outrageous conduct that was intentional or reckless, and this conduct caused severe emotional distress. *Dahlberg v. Lutheran Soc. Servs. of North Dakota*, 625 N.W.2d 241, 248 (N.D.2001) (citing *Muchow v. Lindblad*, 435 N.W.2d 918, 924 (N.D.1989)). A court initially decides whether the defendant's conduct reasonably may be regarded as extreme and outrageous. *Id.* at 249. The extreme and outrageous conduct must be so extreme in

degree that it goes beyond all possible bounds of decency, or it is conduct that is utterly intolerable in a civilized society. *Id.* at 248.

 Nelson alleges that over a period of years she was subject to sexual harassment by Williams. This conduct involved touching, rubbing against her, making sexual innuendos, and walking in on her in the bathroom. Nelson alleges that this conduct resulted in crying spells, suicidal thoughts, and anxiety attacks. Viewing the evidence in the light most favorable to Nelson, she has established a claim for intentional infliction of emotional distress.

### IV. Negligent Supervision Claim

A claim for negligent supervision arises when an employer fails " 'to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons.' " *Nelson v. Gillette*, 571 N.W.2d 332, 340 (N.D.1997) (citations omitted). To recover for negligence, the plaintiff must establish a duty, a breach of that duty, causation, and damages. *Id.*

In March 2000, Nelson informed the District of Williams' alleged inappropriate behavior. By failing to act, the District created a question of material fact as to whether it exercised ordinary care in preventing foreseeable misconduct from Williams against Nelson.

### V. Assault and Battery Claim

Battery is an "intentional tort or an infliction of injury." *Meinstma v. Loram Maint. of Way, Inc.*, 672 N.W.2d 224, 231 (Minn.App.2003). A central issue in an assault action is the intent to do an act, not the intent to injure. *Binstock v. Fort Yates Pub. Sch. Dist.*, 463 N.W.2d 837, 840 (N.D.1990) (citing *Brown v. State*

*Auto. & Cas. Underwriters*, 293 N.W.2d 822 (Minn.1980)). The intention behind Williams' physical contact toward Nelson raises a question of material fact.

### DECISION

Defendants' Motion for Summary Judgment on the hostile work environment claim relating to the conduct of Nelson's coworkers is GRANTED. The remainder of Defendants' motion is DENIED.

IT IS SO ORDERED.